735 P.2d 816

**PACIFIC FRUIT EXPRESS,**
Petitioner Employer,

**Pacific Fruit Express,**
Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF
ARIZONA,** Respondent,

**Isidoro B. Verdugo,**
Respondent Employee.

**No. 1 CA–IC 3372.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 28, 1986.

Bury, Moeller & Humphrey by J. Michael Moeller and Kevin Miniat, Tucson, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for respondent employee.

OPINION

JACOBSON, Judge.

This is an appeal of an award finding a compensable claim for a gradual loss of hearing. The main issue in this review is whether an admission by the claimant that he knew more than one year prior to filing a claim that he suffered a hearing loss and that the loss was the result of noise levels at his employment bars his claim under A.R.S. § 23–1061(A). Collateral issues deal with the burden of proof under A.R.S. § 23–908(D) and whether the claimant in any event suffered a compensable injury.

The claimant, Isidoro Verdugo, has worked for Pacific Fruit since 1948 except for a three year period from 1957 to 1960 when he worked for Southern Pacific Railroad. At Pacific Fruit, he worked as a laborer, journeyman helper, iron worker, carpenter, painter and mechanical refrigeration repairman. As a journeyman helper, he performed sandblasting of railroad cars for five years. Verdugo testified that although the sandblasters wore protective covers, the noise level was very high. The iron worker job exposed Verdugo to noise from pneumatic riveting guns, grinding machines, furnaces, and sledge hammers. In 1976, he began working in the mechanical building as a mechanical refrigeration repairman and since 1980 he has worked in the test cell area. The test cell area requires earplugs and earmuffs and he has used these while working there.

Hearing problems have not caused Verdugo to miss work and he did not go to the doctor until February, 1984. In the late 1970s, Verdugo testified that he became aware of hearing problems, and although he knew that the problem with his hearing had been caused by loud noises at work since the 1970s, he did not report a hearing loss to his supervisor until November, 1983.

Clovis Snider, M.D., a board-certified ear, nose and throat doctor, examined Verdugo and reviewed an audiometric test performed by another doctor. Dr. Snider diagnosed the claimant's condition as high frequency bilateral sensory neuro hearing loss of the kind associated with loud noise exposure. The loss is permanent, but it is not rateable under the AMA Guide to Permanent Impairment. Verdugo's hearing loss begins at 4,000 hertz and is partially recovered by 8,000 hertz, a pattern which is typical with noise-induced exposure. A hearing aid will not help this type of hearing loss. However, protection, rehabilitation and periodic audiometric testing in the future are recommended.

In Dr. Snider's opinion, noise at work most probably contributed to the employee's hearing loss. Dr. Coulthard, the employer's expert, agreed with Dr. Snider's findings as to the cause and the amount of hearing loss.

The administrative law judge found that the sandblasting and riveting activities could have caused a hearing loss, and that Dr. Snider and Dr. Coulthard agreed that Verdugo had a hearing loss attributable to noise exposure at work. The administrative law judge further found that although Verdugo noticed hearing difficulties in the late 1970s, he did not relate his hearing condition to his employment until he was tested by a doctor in February, 1984. Therefore, the administrative law judge concluded that the condition was not compensable until Verdugo learned of the diagnosis, and that the claim was timely filed under A.R.S. § 23–1061(A) [1].

Petitioners contend that this factual finding by the administrative law judge is unsupported by the evidence and point to the following testimony elicited from the claimant on cross-examination:

Q. You first started to become aware of your hearing problems, as I understand, sometime in the late 1970s?

---

1. A.R.S. § 23–1061(A) provides, in part: Notwithstanding the provisions of subsection D of § 23–908, no claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee, ... in writing within one year after the injury occurred or the right thereto accrued. The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should know that he has sustained a compensable injury. * * *

A. I would have to say yes.

  \*    \*    \*    \*    \*    \*

Q. Are you telling me that you have known for quite some time, even before four years, that the loud noises of Pacific Fruit Express could cause you hearing problems?

A. Yes.

  \*    \*    \*    \*    \*    \*

Q. In your opinion, there is no question in your mind that dating back to the 1970s you have known the problem with your hearing has been caused by loud noises at Pacific Fruit Express?

A. Yes.

While conceding this knowledge, the claimant argues that his condition was not compensable until diagnosis disclosed the severity of the injury because, although he may have had a suspicion that his hearing problem was work-related, he did not have the medical expertise necessary to make an accurate diagnosis. Additionally, Verdugo contends that until he saw a doctor, he did not have a compensable claim under *Yates v. Industrial Commission*, 116 Ariz. 125, 568 P.2d 432 (App.1977) because he did not miss any time from work, did not require medical treatment, and had no way of knowing whether the injury was permanent.

■ We agree that A.R.S. § 23–1061(A) is not triggered by mere knowledge of injury. "The facts must establish that the claimant knew or should have known that the illness or disability was causally connected to the industrial exposure." *Nelson v. Industrial Commission*, 134 Ariz. 369, 372, 656 P.2d 1230, 1233 (1982).

The test for determining when a condition becomes manifest for the purpose of starting the one year time requirement of A.R.S. § 23–1061(A) is that point in time when there is a concurrence of the claimant's awareness that a loss has occurred and that the loss is causally related to his employment. *Nelson v. Industrial Commission, supra.* The claimant argues, however, that his lay opinion as to the causal relationship of his condition to his employment is insufficient as a matter of law to establish such a causal connection and therefore the claimant did not know he "sustained a compensable injury" under the provisions of A.R.S. § 23–1061(A).

■ In our opinion, the claimant confuses the proof of compensability of his claim with the requirement that he file his claim within a year after the condition which he seeks to establish as compensable becomes manifest. Whether a claim is ultimately determined to be compensable, that is, a causal connection between the claimant's physical or mental condition and his employment is medically established, has nothing to do with the statutory requirement that the claim seeking to establish compensability be filed within one year after it becomes manifest. To hold otherwise would mean that only those claims which are ultimately determined to be medically causally connected with employment need be filed within one year of their manifestation. We reject this statutory interpretation.

■ The claimant contends, however, that he was unaware that his hearing loss was permanent, relying upon *M.M. Sundt Constr. Co. v. Industrial Commission*, 124 Ariz. 94, 602 P.2d 475 (1979). In *Sundt*, the Arizona Supreme Court affirmed an award of compensation benefits due to a work-related hearing loss. The employer alleged that the employee failed to timely file a claim for compensation under A.R.S. § 23–1061(A) because he was aware of a hearing impairment for at least 15 years before filing the claim. The administrative law judge determined that the injury became manifest when the employee sought medical advice and was informed that the injury was permanent and job-related.

Although respondent was aware of ringing in his ears, it would characteristically disappear approximately one hour after work. The disability neither required him to miss work nor caused him economic loss. Except for a temporary discomfort, respondent had no basis for suspecting a permanent disability. He required no medical attention and was thus never informed of the significance of the impairment until it became immutable.

Where, as here, the disorder is merely slight or trivial, but subsequently develops unexpectedly into a permanent condition, it cannot be said that the compensability of the problem became manifest until diagnosis disclosed the severity of the injury.

*Id.* at 96, 602 P.2d at 477.

However, in this case, the claimant testified that he was aware that the condition was not improving. Verdugo's understanding of the causal connection between his hearing loss and his employment, and the lack of improvement in the condition distinguishes this case from *Sundt, supra.* In *Sundt,* the hearing problem would improve approximately one hour after work. Because the condition caused him only temporary discomfort, and did not cause him to miss work or seek medical treatment, the employee had no basis for suspecting a permanent disability. In this case, the evidence does not support a finding that the claimant's loss was temporary. We therefore find that the administrative law judge's determination that the claim was not barred by A.R.S. § 23–1061(A) is not supported by the evidence.

Since we must set aside this award, but lack the authority to enter judgment for the employer on the timeliness issue, we reach the other two issues raised by this review for the guidance of the parties and the administrative law judge.

■ We first consider the administrative law judge's determination that the employer cannot rely upon the "forthwith" reporting requirements of A.R.S. § 23–908(D)[2] because it failed to meet its burden of showing prejudice caused by the failure of the claimant to report "forthwith". We note that this ruling was in the alternative to the administrative law judge's determination that the claimant was factually excused from compliance with this requirement. We do not reach the issue of whether this factual finding is correct.

In *Magma Copper Co. v. Industrial Commission,* 139 Ariz. 38, 676 P.2d 1096 (1983), the Arizona Supreme Court recognized that A.R.S. § 23–908(E)[3] does allow the commission to relieve a claimant from the forthwith reporting requirements of the statute. One of the factors the commission may consider in exercising this statutory discretion is whether prejudice resulted to the employer as a result of the failure to report forthwith. This prejudice must be measured against the dual purposes of the reporting requirement allowing the employer to provide medical diagnosis, treatment and correction of the condition and facilitating the early investigation of the facts of the injury. *Magma Copper, supra,* however, does not speak to whom bears the burden of establishing the prejudice or lack thereof: the claimant or the employer. Professor Larson takes the position that this burden is upon the claimant. 3 A. Larson, The Law of Workmen's Compensation § 78.32(f) (1983). We agree. The burden of raising the issue and showing that the "forthwith" requirement was not met, is in first instance upon the employer. However, once that fact has been shown, the burden of establishing an excuse for the failure to report forthwith falls on the claimant. Part of establishing such a justifiable excuse is a showing of lack of prejudice to the employer. *Accord Taccalozzi v. Pittsburgh Plate Glass Co.,* 168 Pa.Super. 543, 79 A.2d 800 (1951).

We therefore hold that the administrative law judge improperly shifted the burden of establishing prejudice to the employer. Rather, the correct burden is on the claimant to establish a lack of prejudice.

2. A.R.S. § 23–908(D) provides:

When an accident occurs to an employee, the employee shall forthwith report the accident and the injury resulting therefrom to the employer, and any physician employed by the injured employee shall forthwith report the accident and the injury resulting therefrom to the employer, the insurance carrier and to the commission.

3. A.R.S. § 23–908(E) provides in relevant part:

* * * If the accident is not reported by the employee or his physician forthwith, ... no compensation shall be paid for the injury claimed to have resulted from the accident. The Commission may relieve the injured person or his dependents from the loss or forfeiture of compensation if it believes after investigation that the circumstances attending the failure on the part of the employee or his physician to report the accident and injury are such as to have excused them.

■ Finally, we turn to the employer's contention that in any event the claimant failed to establish a compensable injury. This argument is based upon the supposition that in order for an injury to be compensable, it must result in medical benefits for its treatment or a loss of earning capacity. *Yates v. Industrial Commission, supra.* The argument continues that since the claimant's loss of hearing is not rateable under AMA guidelines (thus resulting in no "disability" for a scheduled injury under A.R.S. § 23–1044(B)) the claimant has not suffered a compensable injury by his loss of hearing.

The claimant agrees that his inability to prove a disability rateable under AMA guidelines precludes a scheduled award under A.R.S. § 23–1044(B), but argues that he incurred medical expenses in "diagnosing" his industrially related loss of hearing and thus has a compensable injury. We need not here determine whether medical expenses related solely to diagnostic services as compared to medical expenses incurred for the treatment of an industrially related injury are sufficient to constitute an industrial responsibility. Claimant's medical expenses are more extensive. Here the medical testimony established that because of his industrially related hearing loss, the claimant would incur future expenses in rehabilitation and periodic audiometric testing to monitor the continued effect of the claimant's employment on his hearing. While these expenses may be classified as preventative in nature, it is clear that they are related to his industrial loss and therefore are an industrial responsibility. *See* A.R.S. § 23–1021; *Emery v. Industrial Commission,* 69 Ariz. 87, 210 P.2d 217 (1949). We therefore hold that the administrative law judge did not err in finding that the claimant suffered a compensable injury.

Award set aside.

GRANT, P.J., and SHELLEY, J., concur.